JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: _____

Brief description of cause: _____

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.  Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------------------X
ABBY SLAKOFF,
                                                                            Civil Action No.
                                Plaintiff,

        -against-

                                                                            **COMPLAINT**
TRUSTEES OF THE UNIVERSITY OF
PENNSYLVANIA, ANNE CUNNINGHAM
*(individually)*, SUSAN CURRAN (individually),
ERIKA GROSS *(individually)* and MARY BRYAN
*(individually)*.
                                                                            Plaintiff Demands A
                                                                            Trial by Jury

                                Defendants.
-------------------------------------------------------------------------X
```

Plaintiff, ABBY SLAKOFF, as and for her Complaint against TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, ANNE CUNNINGHAM *(individually)*, SUSAN CURRAN (individually), ERIKA GROSS *(individually)* and MARY BRYAN *(individually)* respectfully alleges upon information and belief as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), the Family Medical Leave Act ("FMLA"), the American with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA") and the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO") and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against,

retaliated against, and terminated by her employer due to her disability, religion, and status as a victim of domestic violence.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act ("FMLA"), and the Americans with Disabilities Act of 1990.

3. Venue is proper in this district based upon Defendants' principal place of business within the County of Philadelphia, Commonwealth of Pennsylvania, within the Eastern District of Pennsylvania. Additionally, Defendant employed Plaintiff in and the events in question took place in Pennsylvania within the Eastern District of Pennsylvania.

4. On or about September 1, 2017, Plaintiff filed charges with the EEOC against Defendants as set forth herein.

5. Plaintiff's claim was dual filed and is currently pending with the Pennsylvania Human Relations Commission.

6. Plaintiff intends to seek leave from the court to Amend her complaint once her State and City claims are ripe.

7. On or about November 27, 2017, the Equal Employment Opportunity Commission issued Plaintiff her right to sue.

8. This action is being commenced within 90 days of receipt of the EEOC Right to Sue Letter.

## PARTIES

9. Plaintiff ABBY SLAKOFF (hereinafter also referred to as Plaintiff and/or "SLAKOFF") is an individual female, residing in Philadelphia County in the Commonwealth of Pennsylvania.

10. Defendant The Trustees of the University of Pennsylvania (hereinafter referred to as Defendant and/or "UNIVERSITY OF PENNSYLVANIA") is a private educational institution duly existing under the law of the State of Pennsylvania and is located at 3451 Walnut Street, Philadelphia, PA 19104.

11. That always herein mentioned, Defendant UNIVERSITY OF PENNSYLVANIA operated a Student Health Services located at 3535 Market Street, Floor 1, Philadelphia, PA 19104.

12. That at all times material, Defendant Anne Cunningham (hereinafter Defendant and/or "CUNNINGHAM") is employed by Defendant UNIVERSITY OF PENNSYLVANIA at Defendant's Student Health Services' above mentioned location and held title of Nurse Manager with direct supervisory authority over Plaintiff.

13. That at all times material, Defendant SUSAN CURRAN (hereinafter Defendant and/or "CURRAN") was employed by Defendant UNIVERSITY OF PENNSYLVANIA at Defendant's Student Health Services' above-mentioned location and held title of Human Resource Manager with supervisory authority over Plaintiff.

14. That at all times material, Defendant ERIKA GROSS (hereinafter Defendant and/or "GROSS") was employed by Defendant UNIVERSITY OF PENNSYLVANIA at Defendant's Student Health Services' above-mentioned location and held title of Director of Finance with supervisory authority over Plaintiff.

15. That at all times material, Defendant MARY BRYAN (hereinafter Defendant and/or "BRYAN") is employed by Defendant UNIVERSITY OF PENNSYLVANIA at

Defendant's Student Health Services' above-mentioned location and held title of nurse with supervisory authority over Plaintiff.

16. That at all times material, Plaintiff was employed by Defendant UNIVERSITY OF PENNSYLVANIA at Defendant's Student Health Services' above-mentioned location.

## MATERIAL FACTS

17. Plaintiff began working for Defendant UNIVERSITY OF PENNSYLVANIA in or around April 4, 2010.

18. Throughout the course of her employment with Defendant UNIVERSITY OF PENNSYLVANIA, Plaintiff worked as a certified medical assistant for Defendant's Student Health Services.

19. That at all times material Plaintiff rotated amongst three main areas of Defendant's Student Health Services:   Women's Health, Primary Care, and Phlebotomy.

20. In or around September 2015, Defendants became aware that Plaintiff was diagnosed with Irritable Bowel Syndrome, anxiety, and major depressive disorder.

21.  Major Depressive Disorder is a psychological disorder which significantly affects Plaintiff's personal relationships, sleep, and overall health.   During flare ups, Plaintiff suffers from severe fatigue, an inability to concentrate, headaches, and loss of appetite and interest in activity.

22.  Irritable Bowel Syndrome is defined as abdominal pain associated with constipation and/or diarrhea.   During flare ups Plaintiff suffers with intestinal bloating; abdominal pain; irregular bowel habits, including diarrhea, constipation, or both; the need to strain to have a bowel movement; a sense of urgency when having a bowel movement; and the sensation of not completely emptying her bowels upon having a bowel movement.

23. At all times material Plaintiff was experiencing issues at home related to domestic violence, which gave impetus to her Irritable Bowel Syndrome, Major Depressive Disorder, and anxiety.

24. On or around September 2015, Plaintiff submitted a PTO request to Defendants BRYAN and CUNNINGHAM for December 16, 2015. Plaintiff explained that she was having health issues related to her Irritable Bowel Syndrome, Anxiety, and Depression and that she needed to be evaluated by her doctor for Irritable Bowel Syndrome as she was experiencing severe abdominal plain.

25. Following the above discovery, Defendants subjected Plaintiff to numerous acts of disability discrimination, retaliation, and a hostile work environment, all of which exasperated Plaintiff's Irritable Bowel Syndrome, Major Depressive Disorder, and Anxiety.

26. Prior to Plaintiff's scheduled doctor's appointment and on or about December 15, 2015 Plaintiff contacted Defendant BRYAN and informed her that Plaintiff needed to call out of work that day since she was having bloody stool and severe abdominal pains.

27. Thereafter and on or around December 17, 2015, Plaintiff reported for work and presented the December 16, 2015 doctor's note to Defendant BRYAN, who, thereafter gave the doctor's note to Defendant GROSS. Notwithstanding the note, Defendant GROSS met with Plaintiff and gave Plaintiff an "oral" warning with words to the effect of, "Since, July 1, 2015 you have called out 13 times. This is an unacceptable level of unscheduled absences (call outs) and as a result you are receiving an oral warning."

28. Defendants exasperated Plaintiff's health issues related to her Irritable Bowel Syndrome and as a result Plaintiff began taking more and more bathroom breaks.

29. In response to Plaintiff's frequent bathroom breaks, Plaintiff's co-workers frequently commented on Plaintiff's bathroom breaks. By means of example only, whenever Plaintiff would go to the bathroom, Plaintiff would hear coworkers asking with words to the effect of, "Where's Abby?" and "You [indicating Plaintiff] need to get your act together."

30. In or around August 2016, Plaintiff contacted Defendant GROSS and informed Defendant GROSS that Plaintiff was concerned that she was going to be retaliated against for having to take frequent bathroom breaks and for taking off work due to IBS-related issues.

31. Sometime thereafter, and around September 2016, Defendant GROSS approached Plaintiff to speak to her about Plaintiff's frequent bathroom visits and finally informed Plaintiff that she should consider utilizing leave under the Family Medical Leave Act (hereinafter "FMLA").

32. Thereafter, and sometime in September 2016, Plaintiff applied and was approved for intermittent FMLA leave for September 7, 2016 through December 6, 2016.

33. On or about September 7, 2016 Plaintiff began utilizing her intermittent FMLA leave.

34. Almost immediately thereafter, Plaintiff was reassigned to work in Primary Care only.

35. At all times material, Primary Care was a busier unit than both Women's Health and Phlebotomy a result of which made it increasingly difficult for Plaintiff to take bathroom breaks.

36. On or about September 29, 2016, Defendant BRYAN accused Plaintiff that going "missing" after Plaintiff had come back from the bathroom.

37. In response, Plaintiff explained to Defendant CUNNINGHAM that Plaintiff was having issues related to her Irritable Bowel Syndrome.

38. Sometime in the end of December 2016, Plaintiff again applied for and was approved for intermittent FMLA for December 7, 2016 through July 6, 2017.

39. Sometime around the end of January – early February of 2017 Plaintiff reported to Defendant CURRAN to address comments made by Plaintiff's coworkers and Defendant CUNNINGHAM concerning Plaintiff's bathroom breaks.

40. In response Defendant CURRAN held a meeting that included Plaintiff, Defendant BRYAN, Defendant CUNNINGHAM, and Defendant GROSS to discuss "reasonable accommodations" for Plaintiff's Irritable Bowel Syndrome.

41. Despite the meeting, Defendants continued to nitpick Plaitniff's bathroom breaks and deliberately exacerbated Plaintiff's anxiety, depression, and Irritable Bowel Syndrome by chastising Plaintiff whenever Plaintiff had to take a bathroom break.

42. On or about February 1, 2017 Defendant GROSS complained to Plaintiff about Plaintiff's number of FMLA absences and directed Plaintiff to obtain a medical clearance from her treating doctor in order for Plaintiff to return to work.

43. Thereafter and on or about February 6, 2017, Plaintiff faxed her letter of clearance to Defendant GROSS.

44. On or about March 15, 2017, Defendants unlawfully terminated Plaintiff.

45. Defendants failed to provide Plaintiff with a reasonable accommodation and failed to engage in the interactive process of determining a reasonable accommodation for Plaintiff.

46. On or about November 1, 2016 Plaintiff approached Defendant BRYAN upon reporting to work and Plaintiff, who was visibly distraught, informed Defendant that Plaintiff was experiencing domestic violence issues at home with her partner and father of her child.

47. Thereafter, and around March 2, 2017, Plaintiff timely reported to work, following a long evening/early morning domestic abuse. Upon arrival Plaintiff, texted Defendant BRYAN and asked Defendant if she could talk privately with Plaintiff as Plaintiff was too emotionally distraught to attend the staff meeting scheduled for that morning. Plaintiff advised Defendant BRYAN that Plaintiff wanted to file a PFA but wanted to sign into work so as not to get in trouble for being late.

48. Approximately 5 minutes later, Defendant GROSS approached Plaintiff and in an abrasive tone accused Plaintiff that Plaintiff was late, with words to the effect of, "You cannot be in this condition and have to leave."

49. In response, Plaintiff felt explained that clients do not arrive until 10:30 am and asked if she could call Director of UPENN Special Services.   Defendant GROSS again screamed at Plaintiff and yelled words to the effect of, "You cannot be here like this.   You need to get your act together.   We will talk tomorrow – be here at 8 a.m."

50. Immediately thereafter, Plaintiff contacted Special Services and Special Services informed Plaintiff that the department was sending someone to drive Plaintiff to court to obtain an emergency PFA.

51. While Plaintiff was still on the phone with Special Services, Defendant GROSS entered the room and yelled words to the effect of, "You have to leave now!"

52. In response, Plaintiff explained to Special Services that she had to leave her current location and that she would walk over to Special Services.

53. Immediately thereafter, Defendant GROSS physically escorted Plaintiff out of the student health services building.

54. Thereafter, victim advocate, Tracey Cardella transported Plaintiff to family court in Philadelphia whereupon Plaintiff obtained an emergency PFA.

55. Upon receiving the PFA, Plaintiff reported back to Special Services where she met with Direct of Special Services, Patricia Brennan and Associate Director of Special Services, Paige Wigginton, who explained to Plaintiff that she spoke with Defendant GROSS and that Defendant GROSS understood.  Towards the end of the meeting, Detective Perdetha Watson of Special Services informed Plaintiff that per Defendant UNIVERSITY OF PENNSYLVANIA's "domestic leave policy" Plaintiff could apply for FMLA.  Plaintiff replied that she was already utilizing intermittent FMLA for GI issues, depression, and anxiety.

56. Throughout the duration of her employment with Defendants, Plaintiff reported to work and notified Defendants that Plaintiff continued to experience numerous episodes of domestic violence and informed Defendants on numerous occasions that the domestic violence she endured caused Plaintiff's Irritable Bowel Syndrome, Major Depressive Disorder and anxiety.

57. Defendants failed to apprise Plaintiff of her right to apply for additional leave based on Plaintiff's status of a domestic violence victim and as such unlawfully discriminated against Plaintiff based on her status as a domestic violence victim.

58. On or around April 20, 2016, Plaintiff submitted a PTO request for April 22, 2016 to celebrate Passover as Plaintiff had done in previous years to celebrate Passover.  Even though Plaintiff was the only Jewish worker in her department, Defendant BRYAN denied Plaintiff's request explaining that she already agreed to allow two employees to leave work early on April 22, 2016.

59. In response, Plaintiff asked if she could work until noon on Pass Over, however, Defendant BRYAN replied that Passover did not start until sundown and said that Plaintiff could work from 8-4PM as opposed to her regular 9-5PM shift.  In response

Plaintiff explained to Defendant BRYAN that Plaintiff's family was gathering at 2:00 PM for Passover, however Defendant BRYAN still denied Plaintiff PTO.

60. Thereafter and on April 22, 2016, Plaintiff called out of work so that she could observe Passover.

61. Subsequently and on or about April 26, 2016, Defendant GROSS issued Plaintiff a written warning alleging that Plaintiff missed too many days of work and that Plaintiff was having trouble getting her administrative duties done.  In response, Plaintiff asked Defendant GROSS to provide Plaintiff with specific examples of tasks that were not being completed, however none were provided.

62. In addition, Defendant GROSS stated that Plaintiff would not be paid for April 22, 2016, using words to the effect of, "In addition, given that your request for paid time off was denied, you will not be paid for your absence from work on Friday, April 22, 2016."

63.  On or about March 15, 2017, Plaintiff was wrongfully terminated for allegedly breaching Defendants' absence policy.

64. Defendants wrongfully terminated Plaintiff because of Plaintiff's disabilities, religion, and status as a domestic violence victim, and in response to her request for a reasonable accommodation for bathroom breaks and in retaliation for Plaintiff's continued complaints of unlawful conduct.

65. That as a result of Defendants conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

66. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

67. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

68. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant.

69. The above are just some examples, of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

70. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

71. Plaintiff repeats and reallege each and every allegation made in the above paragraphs of this Complaint.

72. Title VII of the Civil Rights Act of 1964, as amended, states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer Practices: It shall be an unlawful employment practice for an employer -- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

73. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her religion.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

**(Not Against Individual Defendants)**

74. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

75. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

76. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of her employment because of her opposition to and reporting of the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE AMERICANS WITH DISABILITIES ACT
(Not Against Individual Defendants)**

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

78. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter I, § 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

79. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disabilities.

80. As such, Plaintiff has been damaged as set forth herein.

**AS A FOURTH CAUSE OF ACTION FOR RETALIATION
UNDER THE AMERICANS WITH DISABILITIES ACT
(Not Against Individual Defendants)**

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

82. Title 42 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336), Chapter 126, Subchapter IV, § 12203, states: "(a) Retaliation: No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

83. Defendants engaged in an unlawful discriminatory practice by discriminating against and retaliating against Plaintiff because of her opposition to Defendants' unlawful employment practices.

84. As such, Plaintiff has been damaged as set forth herein.

**AS A FIFTH CAUSE OF ACTION
FOR RETALIATION AND INTERFERENCE
UNDER THE FAMILY AND MEDICAL LEAVE ACT**

85. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

86. Title 29 of the Family and Medical Leave Act of 1993, Chapter 28, Subchapter I, § 2615 states as follows: "Prohibited Acts: (a) Interference with Rights (1) Exercise of Rights: It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise and right provided under this subchapter. (2) Discrimination: It

shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

87. Defendants interfered with Plaintiff's rights under the above section and discriminated against Plaintiff for opposing Defendants' unlawful employment practice and exercising her rights.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**Dated: Philadelphia, Pennsylvania**
**February 22, 2018**

          **DEREK SMITH LAW GROUP, PLLC**
          **Attorneys for Plaintiffs**

   **By: /s** _____
       **Caroline H. Miller, Esq.**
       **1845 Walnut Street, Suite 1601**
       **Philadelphia, Pennsylvania 19103**
       **(215) 391-4790**

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 4209 Chestnut Street, Philadelphia, Pennsylvania 19104

Address of Defendant: 3451 Walnut Street, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: 3451 Walnut Street, Philadelphia, PA 19104
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

RELATED CASE, IF ANY:
Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Caroline H. Miller, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 2/22/2018      Caroline H. Miller      321420
                     Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 2/22/2018      Caroline H. Miller      321420
                     Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ABBY SLAKOFF | : | CIVIL ACTION |
| v. | : | |
| TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, ANNE CUNNINGHAM (individually), SUSAN CURRAN (individually), ERIKA GROSS (individually) and MARY BRYAN (individually). | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court.  (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| 02/22/2018 | Caroline H. Miller | Abby Slakoff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-391-4790 | 215-893-5288 | caroline@dereksmithlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

    (a)       The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

    (b)       In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

    (c)       The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

    (d)       Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

    (e)       Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

    Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.